UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X

EVGENY YAROSHEVSKY,

                    Plaintiff,

          -against-

BENJAMIN W. KARLIN, SANDRA KARLIN, WINNIE WOODCLIFF PARK, LLC, WOODCLIFF PARK COTTAGES, LLC,

                  Defendants.

----------------------------------------------------------- X

**REPORT & RECOMMENDATION**

25-CV-2747 (DG) (SDE)

**SETH D. EICHENHOLTZ**, United States Magistrate Judge:

*Pro se* Plaintiff Evgeny Yaroshevsky brings claims against Defendants Benjamin W. Karlin, Sandra Karlin, Winnie Woodcliff Park, LLC, and Woodcliff Park Cottages, LLC (collectively, "Defendants"), in connection with a property dispute. Presently before the Court, on referral from the Honorable Diane Gujarati, United States District Judge, are Defendants' motions to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6); and, separately, to impose sanctions on Plaintiff pursuant to Federal Rule of Civil Procedure 11. As part of his response to Defendants' Rule 11 motion, Plaintiff seeks leave to amend his Complaint to partially address the concerns raised in that motion.

For the reasons set forth below, the undersigned respectfully recommends that the Court deny Plaintiff leave to amend his Complaint; grant Defendants' motion for sanctions, including the sanction of dismissal of Plaintiff's Complaint with prejudice; and, even if the Court declines to dismiss the Complaint as a sanction, grant Defendants' motion to dismiss the Complaint.

## FACTUAL & PROCEDURAL BACKGROUND

This action is the latest in a years-long landlord/tenant dispute between the parties. The

1

facts described below are based on Plaintiff's allegations in the Complaint and, where noted, the hundreds of pages of briefing and exhibits submitted by the parties to this action.

## I.   Underlying Landlord/Tenant Dispute

Woodcliff Park is a seasonal beachfront community of cottages on the North Shore of Long Island, New York owned by Winnie Woodcliff Park, LLC and managed by Woodcliff Park Cottages, LLC. [1]   Plaintiff and his wife have owned a cottage in the Woodcliff Park community for around 30 years.   (*See* Complaint ("Compl."), Dkt. No. 1, ¶ 14.)   Both parties agree that Plaintiff occupied the property pursuant to a yearly lease agreement.[2]   (*See id.*; Declaration of Kim A. Smith in support of Motion to Dismiss, ("Smith Decl.") Dkt. No. 38-1, ¶ 21.)

Although there have been multiple disputes between Plaintiff and Defendants since at least 2003, the Complaint centers on a dispute arising in 2022.   (*See* Compl. ¶¶ 179, 325; Smith Decl. ¶¶ 8, 26–27.)   Among other things, Defendants claim Plaintiff failed to return a signed lease agreement for the 2022 season and occupied the property during that season without paying rent. (*Id.* ¶ 27.)   Plaintiff also describes a series of confrontations with Defendants and other tenants at Woodcliff Park.   (*See* Compl. ¶¶ 120, 122, 131–133, 138, 169; *see also* Smith Decl. ¶ 33–34.)

As a result of these events, Defendants withdrew their offer to Plaintiff for a 2022 lease, informed Plaintiff that he and his wife were unlawful holdover tenants, and served them with a 90-day notice terminating their tenancy.   (Smith Decl. ¶ 37.)   Plaintiff did not vacate the premises,

---

[1]   Benjamin Karlin is the sole member of Winnie Woodcliff Park, LLC and Woodcliff Park Cottages, LLC.   (Smith Decl. ¶ 7; Compl. ¶ 9.)   Mr. Karlin's wife, Sandra Karlin, is named as a Defendant but holds no position in Winnie Woodcliff Park, LLC, nor Woodcliff Park Cottages, LLC, nor any other entity related to Woodcliff Park.   (Smith Decl. ¶ 7.)

[2]   Winnie Woodcliff Park, LLC rents parcels of the Woodcliff Park property to tenants, who lease their land but own the cottages and structures that sit on the land.   (*See* Compl. ¶ 27; Smith Decl. ¶ 7.)

and on December 23, 2022, Defendants commenced a summary proceeding in the Town of Riverhead Justice Court to remove him from the property. (*Id.* ¶ 38.)

## II.    State Court Litigation & Settlement

After fierce litigation, the parties agreed to settle the Justice Court proceeding in October 2023. (Smith Decl. ¶¶ 39–51; *see also* Stipulation of Settlement, ("Settlement"), Dkt. No. 38-12.) Under the settlement terms, Plaintiff agreed to vacate the property no later than October 15, 2023. (Settlement § 1.)  In exchange, Defendants agreed to purchase Plaintiff's cottage for fair market value as determined through an appraisal. (*Id.* § 2, § 3a–d.)  Both parties also agreed to a general release of all claims they may have had against one another.  The release language applicable to Plaintiff read as follows:

> "EVGENY YAROSHEVSKY and YELENA YAROSHEVKY, their principals, members, heirs, executors, administrators, successors, and assigns, as RELEASORS, release and discharge WINNIE WOODCLIFF PARK, LLC, as RELEASEE, the RELEASEE, RELEASEE'S principals, members, heirs, executors, administrators, successors, and assigns, from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEE and each of them, the RELEASORS, the RELEASORS' successors and assigns ever had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world until the Effective Date, including any and all claims that were made or which could have been made in the summary proceeding in the Town of Riverhead Justice Court captioned *Winnie Woodcliff Park, LLC. v. Yaroshevsky*, Docket No. 22-LT-120894."

(*Id.* § 7(a) (the "Release").)  The Release also ensured that the Justice Court "retain[ed] jurisdiction to enforce and to resolve any disputes under this stipulation." (*Id.* § 5.)  The parties executed the stipulation on October 10, 2023. (*Id.* p. 6.)

But the settlement stalled in part because, along with other continued disputes, the parties

3

failed to agree on an appraiser and, thus, fair market value for Plaintiff's cottage.  (*See* Compl. ¶ 216; Smith Decl. ¶ 55.)  Plaintiff further alleges the settlement agreement was fraudulent and unenforceable for other reasons.  (*See* Compl. ¶¶ 216–217.)

Plaintiff did not vacate the property.  (Smith Decl. ¶ 61.)  In March 2024, Defendants applied to the Justice Court for a Judgment of Possession and Warrant Eviction, claiming Plaintiff had breached the settlement agreement.  (*Id.* ¶¶ 62–63.)  The Justice Court entered judgment in Defendants' favor, and Plaintiff appealed.  (*Id.* ¶¶ 76–79.)  That appeal remains pending. (*Id.* ¶ 86.)  During the pendency of that appeal, Plaintiff also sought three stays of that judgment in both the Justice Court and the Appellate Term—two of which were denied and one of which remains pending.  (*Id.* ¶¶ 87–101.)

### III.    Plaintiff Seeks Relief in Federal Court

On May 16, 2025, Plaintiff initiated this action by filing his Complaint.  Totaling over 374 pages, the Complaint alleges 14 causes of action.  (*See* Compl. p. 1)  Among other claims, Plaintiff asserts Defendants' actions to evict him from the Property constitute fraud, tax evasion, intentional infliction of emotional distress, public nuisance, deprivation of constitutional rights, and conspiracy under the Racketeer Influenced and Corrupt Organizations Act ("RICO").  (*See id.*) Plaintiff also sought a preliminary injunction.  (*See* Compl. § XI; Order to Show Cause for Temporary Restraining Order, Dkt. No. 5.)

### IV.    Plaintiff's Complaint and Motions Contain False or Misleading Citations Resulting in Multiple Warnings About Sanctions

Shortly after filing the Complaint, Plaintiff also moved to disqualify Defendants' counsel. (Motion to Disqualify Counsel, Dkt. No. 14.)  The Court referred that motion to the then-assigned Magistrate Judge, Peggy Kuo.  (Order Referring Motion dated June 6, 2025.)

Defendants' opposition to Plaintiff's motion to disqualify alleged that Plaintiff used false

or misleading citations throughout his lengthy Complaint and other filings. (*See* Defendants' Opposition to Motion to Disqualify, Dkt. No. 15-10, pp. 4–6.) Plaintiff countered that these assertions were "reckless and untrue," and said his authorities were legitimate. (Plaintiff's Reply in Support of Motion to Disqualify, Dkt. No. 16, ¶¶ 2–3.)

In her opinion denying Plaintiff's motion, Magistrate Judge Kuo noted that she could not locate one of Plaintiff's cited cases and found that two quotations attributed to another case could not be found in the relevant opinion. (Order, Dkt. No. 20, p.7 n.2.) Without "speculat[ing] as to how Plaintiff came to include [these] erroneous quotations in his motion papers," she cautioned Plaintiff that "even though he is proceeding *pro se*, he must still comply strictly with the requirements of representations made to a court pursuant to Federal Rule of Civil Procedure 11(b)" and warned him that failure to do so may result in sanctions. (*Id.*) This was the first warning given to Plaintiff about sanctions for this conduct.

The second warning about sanctions would come shortly thereafter, based on false citations in an entirely separate filing. On June 13, 2025, the day after Magistrate Judge Kuo issued her Order, Plaintiff's motion for injunctive relief was argued before Judge Gujarati. The Court denied Plaintiff's motion to the extent it sought a temporary restraining order for failure to establish such a remedy was appropriate. (Transcript of June 13, 2025 Hearing ("June 13 Tr."), Dkt. No. 50-12, at 22:17–23:1.) The Court also denied Plaintiff's motion to the extent it sought a preliminary injunction, noting at the time that Plaintiff's filings had relied at least in part on nonexistent citations. (*Id.* at 23:2–7.).

During argument, Judge Gujarati warned Plaintiff, "[e]ven though you are proceeding *pro se*, you must take care to comply with the Federal Rules of Civil Procedure, including Rule 11(b), which relates to representations to the Court." (*Id.* at 6:2–9.) Plaintiff expressly denied using

5

generative artificial intelligence ("AI") to draft his papers and said he had found cases on Google, other search engines, and legal websites. (*See id.* at 6:16–22.) Judge Gujarati credited Plaintiff's explanation and said she assumed Plaintiff did not know he was using unreliable sources. (*See id.* at 6:23–7:7.) Plaintiff "promis[ed] to be more meticulous" in the future. (*Id.* at 7:5–7.)

At the conclusion of the conference, Judge Gujarati set a briefing schedule for Defendants' motion to dismiss and told Plaintiff he could renew his motion for injunctive relief with proper supporting documentation. (Minute Entry dated June 13, 2025.) He did so on July 17, 2025. (*See* Plaintiff's Supplemental Declaration in Support of Renewed Order to Show Cause, Dkt. No. 22.)

## V.  Plaintiff Persists in Filing Documents with False or Misleading Citations

Plaintiff made additional filings after this conference, and Defendants again asserted that Plaintiff's filings contained additional nonexistent or misleading citations. (*See, e.g.*, Letter, Dkt. No. 32.) On August 5, 2025, Judge Gujarati held a conference and heard argument on the alleged fake citations contained in Plaintiff's filings. (Minute Entry dated Aug. 5, 2025.) That hearing resulted in Plaintiff's third warning from the Court about his conduct and the potential for sanctions.

During the in-person conference, Judge Gujarati said she had "real concerns" about Plaintiff's "very troubling conduct" and warned that he needed to take the issue "extremely seriously." (Transcript of Aug. 25, 2025 Conference, ("Aug. 25 Tr."), Dkt. No. 50-19, at 2:19–4:2.) The Court asked Plaintiff multiple times if he would like to withdraw his Complaint without prejudice, remove any incorrect citations, and refile his claims in a new complaint that invitation. (*See id.* at 4:19–20; 8:2–10:7; 12:23–13:5; 14:9–11; 16:24–17:2; 19:23–20:5.) Plaintiff declined to do so but accepted the Court's corresponding invitation to withdraw his renewed motion for injunctive relief because it also relied on fake citations. (*See id.* at 12:23–13:20.) After again

explaining the potential consequences of proceeding on a Complaint with incorrect authority, the Court told Plaintiff "[it] had offered [him] an opportunity, [he was] not interested in the opportunity to correct [his] mistakes, and so [he was] going to be stuck with the consequences of that decision." (*Id.* at 19:23–20:1.)  The Court also warned Plaintiff that if there were any fake citations in his forthcoming briefing in opposition to Defendants' motion to dismiss, he could be sanctioned.  (*See id.* at 16:1–5.)

After Plaintiff failed to revise his filings, Defendants reviewed Plaintiff's briefing and identified at least five cases that did not exist and thirteen instances in which the language Plaintiff quoted did not appear in the case.  (*See* Declaration of Amanda Star Frazer, ("Frazer Decl."), Dkt. No. 50-1, ¶ 40.)  In response, Plaintiff said his papers contained "at most, good-faith mislabeling or citation variations traceable to open-access databases."  (Declaration of Plaintiff in Opposition to Motion to Dismiss, ("Pl's. MTD Opp."), Dkt. No. 39, ¶ 14.)  The parties' fully briefed motion to dismiss was filed on August 11, 2025.

### VI.    Defendants Provide Plaintiff with Notice of an Anticipated Motion for Sanctions and Plaintiff Fails to Correct the False and Misleading Citations

Despite the multiple warnings from the Court and continued mention by Defendants that Plaintiff continued to rely on false or misleading sanctions, Plaintiff failed to take any steps to correct or withdraw any of his filings at any time.

On December 4, 2025, Defendants served Plaintiff with a complete copy of a proposed motion for sanctions pursuant to Rule 11.  (Letter, Dkt. No. 49-1, p. 1; *see also* Memorandum in Support of Defendants' Motion for Sanctions, ("Defs.' Sanctions Mot."), Dkt. No. 50-31.)  In the proposed motion, Defendants argued that Plaintiff should be sanctioned for his persistent use of fake and misleading citations. (*See* Defs.' Sanctions Mot. pp. 14 –24.)  They further argued that Plaintiff should be sanctioned for bringing claims barred by the Release, and for fabricating facts

to support his arguments that the Justice Court and Defendants' counsel acted fraudulently.  (*See id.*)  The motion sought dismissal of Plaintiff's complaint and striking of his filings, as well as costs and attorneys' fees Defendants incurred in opposing Plaintiff's arguments.  (*See id.* p. 25.)  Defendants warned Plaintiff that if he did not withdraw his Complaint with prejudice by December 26, 2025, Defendants would move for sanctions.  *(Id.)*  Despite the three prior warnings from the Court, and the benefit of the safe harbor period before Defendants could file their motion for sanctions, Plaintiff did not correct the prior filings in response to the notice of the motion, nor did he respond to Defendants at all.

On December 29, 2025, after Plaintiff failed to take corrective action during the safe harbor period, Defendants filed a letter seeking leave to file their motion for sanctions, which was referred to the undersigned.  (Order dated Dec. 30, 2025.)

## VII.   During Argument on the Motion for Sanctions, Plaintiff Makes Material Misrepresentations to the Court

After this matter was referred to the undersigned, the Court scheduled a hearing on the motion for January 7, 2026.  (*Id.*)  The purpose of the hearing was to discuss with Plaintiff the serious consequences associated with the conduct described by Defendants and to see if there was any opportunity to resolve the matter short of a decision to sanction Plaintiff.

During the hearing, the undersigned echoed previous warnings about "the seriousness of the allegations contained in the motion and the seriousness of the potential consequences and sanctions [he was] facing in this case."  (Transcript of Jan. 7, 2026 Hearing, ("Jan. 7 Tr."), Dkt. No. 51, at 2:20–22.)  To ensure there was no misunderstanding about Defendants' allegations, the Court asked Defendants to explain their argument that Plaintiff's Complaint should be dismissed for relying on inappropriate citations.  (*See id.* at 2:15–3:23.)  The undersigned also explained plainly that the issue of fake and misleading citations was "most critical" because it could be a

basis to dismiss Plaintiff's Complaint entirely.  (*Id.* at 5:18–21.)

In response to Defendants' arguments, Plaintiff explained that he had used and relied on publicly available sources, including Google Scholar, Court Listener, and Justia Law for legal research.  (*See id.* at 6: 11–9:10.)  The undersigned asked Plaintiff multiple times if Plaintiff had checked every citation in his papers to determine it was accurate, and Plaintiff affirmed he had done so each time.  (*See id.* at 9:15–11:15.)  Ultimately, the undersigned and Plaintiff then had the following exchange:

> "THE COURT:  So with all of that said, I will again confirm with you is your representation to this Court that you've checked each and every citation in your papers filed with the Court, including the ones in the Rule 11 motion cited by defendant's counsel, and you've verified that they all exist and stand for the proposition for which you cite them?
> PLAINTIFF:  Yeah. Verified since the last hearing (indiscernible), so verified those citations and (inaudible).  Yes."

(*Id.* at 13:18–14:2.)

After the undersigned suggested that he would take a short break from the hearing to personally verify whether the citations were accurate, Plaintiff began to back away from his prior representations.  Without yet acknowledging some of his citations were false or misleading, Plaintiff instead argued he had not had an opportunity to correct any inaccurate citations because no one had ordered him to do so.  (*See id.* at 16:2–18:17.)  The undersigned rejected this argument. (*See id.* at 19:12–20.)

Only then—after at least five prior declarations to the contrary during the conference and numerous representations over the prior seven months to other judges and counsel—did Plaintiff finally acknowledge that "[s]ome of [the citations], yeah, definitely were not good and correct." (*Id.* at 19:20–21.)  Plaintiff also suggested he wanted the opportunity to amend his complaint to correct any false or misleading citations contained in the complaint.  (*See id.* at 20:16 –21:6.)  The

9

undersigned expressed concern that Plaintiff had not yet done so, given that these issues were first identified seven months prior, but made clear it would not rule on any motion without giving Plaintiff an opportunity to respond in writing.  (*See id.* at 21:6–24:7.)

Plaintiff then also admitted that, despite his prior representation to Judge Gujarati to the contrary, he had used AI software, including Gemini, the AI feature built in the Google Chrome browser, to obtain at least some citations on some legal issues.  (*See id.* at 58:4–6.)  When asked if he had verified any of the case law provided to him by Google Gemini before filing his Complaint, Plaintiff admitted that he had not.  (*See id.* at 58:19–59:3.)

The undersigned reiterated the "potentially extremely serious consequences" that Plaintiff faced and then heard argument on Defendants' other arguments for sanctions or dismissal, including that Plaintiff's claims were precluded by the release executed to resolve the Justice Court proceeding, and that Plaintiff failed to state a civil RICO claim with sufficient specificity. (*See id.* at 24:11–12; 24:13–57:25.)

The hearing was briefly adjourned to review Plaintiff's citations, which confirmed that some citations did not exist and some did not stand for the propositions asserted.  (*See id.* at 65:8–16.)  The undersigned then permitted Plaintiff an opportunity to decide how he wanted to proceed. The undersigned reiterated some of the possibilities discussed during the hearing:  Plaintiff could seek to withdraw his Complaint; seek the opportunity to amend, with the understanding that amending might not fully resolve the conduct at issue and that he could still be subject to Rule 11 sanctions; or move forward with his claims as they stood.  (*See id.* at 69:5–70:20.)  The undersigned also reiterated its serious concerns with granting leave to amend given the belated nature of the request and directed Plaintiff to confer with Defendants before requesting leave to withdraw or amend his complaint.  (*See id.* at 72:4–16.)  Plaintiff acknowledged that he understood these

10

directions.  (*See id.* at 72:17–18.)  The undersigned also made clear that a request to amend at this stage would likely not address the concerns raised in the Rule 11 motion.  (*See id.* at 72:7–8.)  Plaintiff was ordered to file his opposition to Defendants' motion for sanctions or a status letter detailing how he intended to proceed by January 14, 2026.  (Order dated Jan. 7, 2026.)

**VIII.    Plaintiff Seeks Leave to Amend**

On January 13, 2026, seven months after Plaintiff was first warned about false and misleading citations in his Complaint, Plaintiff filed a letter requesting leave to amend his Complaint.  (Plaintiff's Motion to Amend, ("Pl's. Mot. to Amend"), Dkt. No. 52.)  Invoking his *pro se* status, and completely ignoring his prior misrepresentations, Plaintiff argued that any citation errors were unintentional and "arose from inadvertence and from the practical challenges of proceeding *pro se* in a procedurally and factually complex matter." (*Id.* p. 1.)  On the same day, Plaintiff also filed his opposition to Defendants' motion for sanctions.  (Opposition to Motion for Sanctions, Dkt. No. 53.)

On January 16, 2026, Defendants filed an opposition to the request to amend the complaint, in which they argued that Plaintiff's request to amend should be denied for futility, undue delay, and prejudice pursuant to Federal Rule of Civil Procedure 15(a).  (*See* Letter in Opposition to Plaintiff's Request for Leave to Amend Complaint, Dkt. No. 55.)

On January 21, 2026, Defendants filed a reply in support of their motion for sanctions. (Reply, Dkt. No. 57.)  There, Defendants asserted Plaintiff used fabricated authorities in his opposition to their motion for sanctions and identified each instance where the case cited by Plaintiff allegedly did not include the quoted material or did not accurately describe the case's holding.  (*See id.* pp. 1–4.)

After the motion was fully briefed, the undersigned entered an order to ensure Plaintiff

clearly understood the posture of the case.  In that Order, the undersigned "reiterate[d] its prior Orders and expectations and [gave] Plaintiff one final chance to decide how to proceed."  (Order dated Jan. 21, 2026).[3]  On January 23, 2026, Plaintiff confirmed that "[a]fter careful review of the Court's clarifications and expectations," he wanted to proceed with his request to amend.  (Letter, Dkt. No. 58, p. 1.)

## DISCUSSION

Although Defendants initially sought dismissal under Rule 12(b)(6) and 12(b)(1), because Defendants' subsequent motion for sanctions also seeks dismissal with prejudice, the undersigned addresses that motion first.  As part of the consideration into whether sanctions are appropriate, the undersigned addresses Plaintiff's request for leave to amend the complaint.

### I.    Defendants' Motion for Sanctions

Defendants argue Plaintiff should be sanctioned (i) for using false and nonexistent legal authority in his papers submitted to the Court; (ii) for fabricating facts to support his claims regarding Defendants' alleged RICO conspiracy and the theories of wrongdoing by Defendants' counsel and the Justice Court; and (iii) for bringing a frivolous Complaint barred by the Release. (*See* Defs.' Sanctions Mot.)  Defendants assert sanctions should include dismissal of the Complaint with prejudice and striking Plaintiff's filings from the record.  (*Id.* p. 25.)  The undersigned recommends the Court grant Defendants' motion for Rule 11 sanctions, which should include dismissal of Plaintiff's Complaint with prejudice.

---

[3]  That Order clarified Plaintiff's obligation to follow all directions and orders from the Court—even those given orally as opposed to in writing.  (*Id.*)  It also explained that the Court had indeed directed Plaintiff to confer with Defendants before seeking leave to amend, and that the Court had not found Plaintiff should have an opportunity to amend given the concerns addressed at the January 7 conference.  (*Id.*)

### A.  Standard for Sanctions Under Rule 11

"'The central purpose of Rule 11 is to deter baseless filings in district court and thus . . . streamline the administration and procedure of the federal courts.'"  *Kumaran v. Northland Energy Trading, LLC*, 762 F. Supp. 3d 322, 336 (S.D.N.Y. 2025) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)).  To accomplish that purpose, the Rule requires any party filing papers in federal court to certify those papers are "not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and that the arguments within are "warranted by existing law" or "nonfrivolous."  Fed. R. Civ. P. 11(b).

If, "after notice and a reasonable opportunity to respond," a court determines Rule 11 has been violated, the court may impose an appropriate sanction on "any attorney, law firm, or party." *Id.* at (c)(1).  The Rule also allows a court to award reasonable expenses, including attorneys' fees, to the prevailing party on the motion for sanctions.  *Id.* at (c)(2).  A district court has broad discretion in determining whether to impose any sanction for a Rule 11 violation.  *See, e.g.*, *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004).  In exercising that discretion, "a district court is obligated to exercise caution and restraint."  *Kingvision Pay-Per-View Ltd. v. Ramierez*, 05-CV-2778, 2005 WL 1785113, at *4 (S.D.N.Y. July 28, 2005); *see also Galin v. Hamada*, 283 F. Supp. 3d 189, 201 (S.D.N.Y. 2017) ("Rule 11 sanctions are reserved for extraordinary circumstances") (internal quotation marks and citation omitted), *aff'd*, 753 F. App'x 3 (2d Cir. 2018). "[B]ecause the purpose of imposing Rule 11 sanctions is deterrence, a court should impose the least severe sanctions necessary to achieve that goal."  *Schottenstein v. Schottenstein,* 04-CV-5851, 2005 WL 912017, at *2 (S.D.N.Y. Apr. 18, 2005) (citing Fed. R. Civ. P. 11(c)(2)).  A court generally considers the following factors when deciding whether to impose Rule 11 sanctions:

> "(1) [w]hether the improper conduct was willful, or negligent;
> (2) whether it was part of a pattern or activity, or an isolated event;

13

(3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) what effect it had on the litigation process in time or expense; (6) whether the responsible person is trained in the law; (7) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case."

*Ratner v. Robinson*, 13-CV-6278, 2015 WL 6965077, at *18–19 (E.D.N.Y. Nov. 10, 2015) (quoting *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 506 (E.D.N.Y. 1998), *aff'd*, 205 F.3d 1327 (2d Cir. 2000)); *see also* Fed. R. Civ. P. 11 Advisory Committee's Note to 1993 Amendment.

Rule 11 also includes two threshold procedural requirements to "safeguard due process rights." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 58 (2d Cir. 2000). First, a motion for sanctions must "be made separately from any other motion and . . . describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Second, the Rule's "safe harbor provision," requires a party seeking sanctions to serve their motion on the opposing party at least 21 days before filing it in court to allow the opposing party the opportunity to withdraw or correct the challenged representation. *Id.* A motion that fails to comply with these requirements must be denied. *See, e.g.*, *Bryant v. Britt*, 420 F.3d 161, 163 n.2 (2d Cir. 2005).

## B. Application of Rule 11 to *Pro Se* Litigants

The Second Circuit has repeatedly instructed that *pro se* litigants are deserving of "special solicitude" and must be held to less stringent standards than lawyers. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (quoting *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994)). Nevertheless, *pro se* litigants are "not exempt . . . from compliance with relevant rules of procedural and substantive law," *Triestman*, 470 F.3d at 477, and "[i]t is well-settled that Rule 11 applies to *pro se* litigants." *Mantis Transp. v. Kenner*, 45 F. Supp. 3d 229, 253 (E.D.N.Y. 2014); *see also Ekeoma v. City of New York*, 23-CV-946, 2025 WL 2952562, at *3 (E.D.N.Y. Oct. 8,

14

2025).  Although district courts may consider a plaintiff's *pro se* status in determining whether to impose sanctions, *see Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989),"[t]he fact that a litigant appears *pro se* does not shield him from Rule 11 sanctions because one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets."  *Malley v. N.Y. City Bd. of Educ.*, 207 F. Supp. 2d 256, 259 (S.D.N.Y. 2002); *see also Lipin v. Hunt*, 573 F. Supp. 2d 836, 845 (S.D.N.Y. 2008) ("[A] court's authority to enjoin vexatious litigation extends equally over *pro se* litigants and those represented by counsel, and a court's special solicitude towards *pro se* litigants does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights.").

Still, courts do not impose sanctions on a *pro se* litigant lightly.  "[W]here a *pro se* litigant is alleged to have run afoul of Rule 11, courts generally apply a more lenient standard."  *Sachs v. Matano*, 15-CV-6049, 2016 WL 4179792, at *7 (E.D.N.Y. July 15, 2016), *report and recommendation adopted*, 2016 WL 4186708 (E.D.N.Y. Aug. 4, 2016).   Under this more lenient standard, "Rule 11's application [is] determined on a sliding scale according to the litigant's level of sophistication."  *Horton v. Trans World Airlines Corp.*, 169 F.R.D. 11, at *16 (E.D.N.Y. 1996).  Sanctions may be more appropriate when a *pro se* litigant has legal experience or has been previously warned of possible sanctions.  *See, e.g.*, *Colida v. Nokia Inc.*, 07-CV-8056, 2008 WL 4517188, at *12 (S.D.N.Y. May 6, 2008) (imposition of sanctions was warranted against *pro se* plaintiff in part because "plaintiff had been previously warned about the possibility of Rule 11 sanctions"); *Fariello v. Campbell*, 860 F. Supp. 54, 71 (E.D.N.Y.1994) (awarding sanctions where *pro se* plaintiff was previously warned that sanctions may be imposed if he filed another action); *Baasch v. Reyer*, 827 F. Supp. 940, 944 (E.D.N.Y. 1993) (imposing sanctions when *pro se* plaintiff

had "shown some competence in finding and understanding the law," the court had explained to plaintiff why his claims had failed and made him "fully aware of the legal and factual requirements of his claims," and had also warned plaintiff about possible sanctions, and plaintiff had nonetheless filed a motion for a new trial).

### C. Sanctions Are Appropriate Under the Circumstances Presented Here

The undersigned finds Defendants met Rule 11's procedural safeguards, and that, even considering the special solicitude due a *pro se* litigant, Plaintiff's persistent and unrepentant use of false and misleading citations, along with the material misrepresentations he made to three judges about his conduct, warrants sanctions, which should include dismissal of his claims with prejudice.

### 1. Defendants Met Rule 11's Procedural Requirements

The undersigned first considers whether Defendants met the safe harbor notice requirement of Rule 11 and concludes that they have. As previously discussed, Defendants served a copy of their motion on Plaintiff 21 days before moving for sanctions.[4] *See supra* pp. 7–8. The undersigned finds this provided Plaintiff with the requisite notice to correct the alleged misconduct prior to Defendants seeking sanctions. But Plaintiff wholly failed to do so. Instead, he persisted in his misconduct by invoking nonexistent and inaccurate authority in his opposition to Defendants' motion for sanctions. *See supra* p. 11.

---

[4] Plaintiff's argument that there is overlap between Defendants' motion to dismiss and motion for sanctions is irrelevant. (*See* Plaintiff's Opposition to Motion for Sanctions, Dkt. No. 53-1 ¶ 22.) Both motions may be brought simultaneously so long as a Rule 11 motion is filed "separately," as occurred here. *See* Fed. R. Civ. P. 11(c)(2); *see also JGIAP RH 160 LLC v. CRI Holding Corp.*, 21-CV-02489, 2023 WL 5979125 (E.D.N.Y. Aug. 16, 2023) (addressing Rule 11 motion and Rule 12(b)(6) when both were made separately in compliance with safe harbor provision) *report and recommendation adopted*, 2023 WL 6307320 (E.D.N.Y. Sept. 28, 2023).

**2.    Plaintiff's Use of False and Misleading Citations Is Sanctionable**

Not only is Plaintiff's Complaint rife with citations to nonexistent cases, but he has continued to rely on citations to nonexistent authority in almost every filing—including his most recent filing opposing Defendants' motion for sanctions. *See supra* p. 11.  In that opposition, Defendants identify eight cases that do not stand for the cited proposition or do not include the purported quotation.  (*See* Reply in Support of Defendants' Motion for Sanctions, Dkt. No. 57, pp. 1–4.)  Defendants also identify at least seven cases cited in Plaintiff's Complaint and five cases cited in Plaintiff's opposition to Defendants' motion to dismiss that do not exist at all.  (*See* Frazer Decl. ¶¶ 5–13; Declaration of Kim A. Smith in Support of Defendants' Motion for Sanctions, ("Sanctions Decl."), Dkt. No. 50-1, ¶ 40.)  Defendants also identify multiple other cases that do not stand for the proposition cited in Plaintiff's filings.  (*See, e.g.*, Letter, Dk. No. 32, p. 1; Sanctions Decl. ¶¶ 40, 52).  The Court has confirmed Defendants' findings through its own review of Plaintiff's citations.

These errors are only exacerbated by Plaintiff's use of generative AI as a drafting tool, without sufficient effort taken to verify the accuracy of the draft product.  *See supra* p. 10.  That kind of conduct, whether undertaken by counsel or a *pro se* litigant, creates a heavy and undue burden on opposing litigants and the courts to determine the accuracy and merit of easily generated, voluminous, yet potentially error-filled, filings.  That is why, after warnings and opportunities to correct, the persistent presentation of nonexistent legal authority or misrepresenting the import of legal authority resulting from a lack of effort to verify the content of AI-generated drafts is sanctionable.  *See, e.g.*, *Ramirez v. Humala*, 24-CV-242, 2025 WL 1384161, at *1 (E.D.N.Y. May 13, 2025) (listing cases addressing AI-generated citations and finding "the Second Circuit, as well as district courts across the country, have found the submission of nonexistent case citations in

17

filings to the court to constitute sanctionable conduct under Rule 11(b)(2).”); *Ferris v. Amazon.com Services, LLC*, 24-CV-304, 2025 WL 1122235, at *2 (N.D. Miss. Apr. 16, 2025) (imposing sanctions against *pro se* plaintiff who continued to submit false citations generated by AI after being put on notice by defendant, and ordering plaintiff to pay defendant's costs).

Here, Plaintiff's failure to verify and correct his filings has, for months, distracted from adjudicating Plaintiff's claims on their merits. Instead, the Court and Defendants' counsel have been forced to spend significant time and resources to determine whether the authorities cited in Plaintiff's error-filled filings actually support his arguments. Making matters worse, Plaintiff has misrepresented his conduct on multiple occasions, arguing as recently as *oral argument on the motion for sanctions* that he had verified his citations when he actually had not. *See supra* pp. 9–10. Given the severity of Plaintiff's conduct, the undersigned finds sanctions are appropriate even under the more lenient standard applicable to Plaintiff as a *pro se* litigant. *See, e.g.*, *Williams v. Off. of Child Support*, 21-CV-8235, 2023 WL 2396354, at *5 (S.D.N.Y. Mar. 3, 2023) (imposing sanctions when *pro se* plaintiff caused defense counsel and court "to incur substantial time in disposing of the case" by willfully filing claims plaintiff knew were false), *report and recommendation adopted*, 2023 WL 3967791 (S.D.N.Y. June 13, 2023); *Shepherd v. Annucci*, 921 F.3d 89, 97–98 (2d Cir. 2019) (affirming sanction of dismissal when *pro se* plaintiff acted in bad faith, even when lesser sanctions were not considered).

### a. Plaintiff's Belated Request to Amend Does Not Sufficiently Address His Misconduct and Should Be Denied

Despite failing to do so for months, Plaintiff now requests an opportunity to amend his Complaint to address the concerns raised in the Rule 11 motion. *See supra* pp. 9–11. The undersigned notes that such an amendment would not fully resolve the conduct at issue in Defendants' Rule 11 motion, which extends beyond citations in Plaintiff's Complaint to citations

18

in other documents and misrepresentations about opposing counsel. *See supra* pp. 10–11. Nor would it address Plaintiff's persistent misrepresentations to the Court. However, even if it would, the undersigned respectfully recommends Plaintiff's request for leave to amend be denied.

Under Rule 15(a)(1), a party may amend a pleading without seeking permission from the Court once within 21 days of serving it, or 21 days after a responsive pleading or Rule 12 motion is served. Fed. R. Civ. P. 15(a)(1). Otherwise, a party may only amend its pleading after obtaining written consent from the opposing party or with leave of court. *Id.* at (a)(2). Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." But the district court has broad discretion whether to grant or deny leave to amend. *See, e.g.*, *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995).

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks and citation omitted). But leave to amend may still be denied, even to a *pro se* plaintiff, with "good reason, . . . including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Zappin v. Cooper*, 23-165, 2024 WL 3084015, at *3 (2d Cir. June 21, 2024) (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014)).

Here, Plaintiff had numerous opportunities over the past seven months to amend his Complaint and address his false and misleading citations. These opportunities include but are not limited to when Judge Gujarati discussed the deficiencies in his Complaint at the August 5, 2025 conference; after Defendants filed their motion to dismiss; after Defendants sent their safe harbor letter notifying him of their intention to seek sanctions; after Defendants filed their motion for sanctions; and finally, after the January 7 conference before the undersigned. *See supra* pp. 4–11.

By rejecting these opportunities, Plaintiff has allowed this case to go down a path of intense and lengthy motion practice that could have been avoided had he amended when these issues were first brought to his attention. Considering that this prejudice to defendants is one of the most important considerations in reviewing a motion to amend, the undersigned finds that failure for months to seek leave to amend his Complaint in the face of persistent warnings, resulting in Defendants having to file multiple motions, is precisely the kind of bad faith and undue delay that warrant denial of leave. *See Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 202 F. Supp. 2d 126, 140 (S.D.N.Y. 2002) (imposing sanctions on *pro se* plaintiff "forced" defendants to litigate meritless claims).

Even if the Court were inclined to grant leave to amend, the undersigned respectfully recommends that the Court sanction Plaintiff for his persistent misrepresentations to the Court and his inexplicable delay in seeking to correct his Complaint. Thus, the undersigned also recommends that the Court deny Plaintiff's request to amend his Complaint as an alternative to sanctions.

### b. The Relevant Factors Support an Imposition of Sanctions

The relevant factors also weigh in favor of imposing sanctions in this case. As detailed *supra*, Plaintiff's conduct exceeds negligence or an innocent error by a *pro se* litigant. Even assuming he did not know the cases cited in his Complaint were wrong at first, when those issues were brought to his attention by opposing counsel and three different judges, he denied any inaccuracies existed and accused Defendants of lying. *See supra* pp. 5–7, 9. He also continued to use false or misleading citations in filings. *See supra* pp. 7, 11. In the end, Plaintiff ultimately admitted he *knew* his authorities were false despite insisting otherwise for many months. *See supra* pp. 8–10. Notwithstanding that knowledge, he failed to correct them—despite being asked by defense counsel and multiple federal judges on at least six occasions to do so. *See supra* pp. 4–

20

12. Such overt misrepresentations are willful and warrant serious sanctions. *Crum v. Dodrill*, 562 F. Supp. 2d 366, 382–83 (N.D.N.Y. 2008) (collecting cases and imposing sanction of dismissal against *pro se* incarcerated plaintiff for making material misrepresentation in complaint).

But most importantly, this Court's clear and consistent warnings made Plaintiff fully aware of the possibility of sanctions. Over a period of more than nine months, the Court explained to Plaintiff his obligations under Rule 11 and warned him many times of the potential consequences of his conduct. *See supra* pp. 5–10. Despite those warnings, Plaintiff continued to file multiple papers with inaccurate or nonexistent citations—even though he now admits he knew they were incorrect. *See supra* pp. 7, 10. He also affirmatively and repeatedly denied that he was using nonexistent citations, as recently as the argument about the instant motion. *See supra* pp. 4–6, 9–11. Even if given the benefit of the doubt as a *pro se* litigant, Plaintiff responded by, at best, denying there was an issue, but also arguably making material representations to Judge Gujarati and the undersigned. *See supra* pp. 5, 9. Such dogged determination to use reckless or outright false arguments to the Court despite clear warnings weighs in favor of sanctions.[5] *See Khudai v. Akamai Techs.*, 20-CV-3686, 2023 WL 7174616, at *5–6 (S.D.N.Y. Nov. 1, 2023) (imposing sanctions on *pro se* litigant who continued to make unsubstantiated statements about defendant and its attorneys for nearly a year), *report and recommendation adopted*, 2024 WL 2046052 (S.D.N.Y. May 8, 2024)

### 3.  Sanctions Should Include Dismissal with Prejudice

Having found Plaintiff's conduct is sanctionable, the undersigned now determines what

---

[5] Although not required to grant Defendants' motion, such subjective bad faith renders sanctions even more appropriate in this case. *Cf. In re Pennie & Edmonds LLP*, 323 F.3d 86 (2d Cir. 2003) (comparing objective reasonableness standard for imposing Rule 11 sanctions pursuant to motion brought by opposing counsel to subjective bad faith standard for district court's inherent authority to impose sanctions *sua sponte*).

sanctions should be imposed.  Under these circumstances, the undersigned finds sanctions less than dismissal with prejudice would not deter Plaintiff from ongoing misconduct in this case. Plaintiff is unrepentant and has demonstrated that he will persist in misconduct despite this Court's warnings.  *See supra* pp 4–12.  Such persistence in making misleading representations warrants dismissal with prejudice.[6]  *See, e.g.*, *Saxena v. Martinez-Hernandez*, 22-CV-2126, 2025 WL 1194003, at *2 (D. Nev. Apr. 23, 2025) ("[plaintiff's] use of AI generated cases—and his subsequent refusal to accept responsibility for doing so—is just another example of [his] abusive litigation tactics, and further explains why the court issued case-terminating sanctions"); *O'Brien v. Flick*, 2025 WL 242924, at *5 (S.D. Fla. Jan. 10, 2025) (imposing sanction of dismissal against plaintiff who filed papers citing to nonexistent cases and unpersuasively represented to the court that the citations were "the result of an inadvertent mix-up").

### 4. Shifting of Fees Related to Defendants' Rule 11 Motion Is an Additional Appropriate Sanction

Because defense counsel spent a significant amount of time evaluating and verifying Plaintiff's citations and authorities as a result of his refusal to admit and correct the citations, the undersigned recommends that the Court grant Defendants leave to file a formal fee application to recover fees related to the Rule 11 Motion.  *See* Fed. R. Civ. P. 11(c)(4).  The undersigned also recommends Plaintiff be afforded the opportunity to oppose the amount sought, including by addressing his ability to pay such a sanction.  To the extent Plaintiff makes such an argument, he must support it with appropriate evidence.  And to the extent Plaintiff cites legal authority in response to the fee application, he must check all citations in that filing and include an exhibit with

---

[6] While the undersigned is mindful that dispositive sanctions are disfavored in the Second Circuit, *Weller v. Ichan School of Medicine at Mt. Sinai*, 23-CV-4775, 2025 WL 3537854, at *8 (E.D.N.Y Dec. 10, 2025) (internal citations omitted), the facts here present one of those unique circumstances where a dispositive sanction should be considered.

copies of all citations to electronic copies of authority.

In other cases, courts have also imposed monetary sanctions against parties who used incorrect citations in briefs, including when the inaccuracies are a result of using AI software. *See, e.g.*, *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 466–67 (S.D.N.Y. 2023) (imposing $5,000 monetary penalty on two lawyers for submitting citations to fake opinions). Here, although the conduct is sufficiently egregious to warrant such sanctions, given Plaintiff's *pro se* status, as well as the likelihood that holding Plaintiff responsible for the fees and costs associated with Defendants' motion to dismiss will constitute a substantial financial sanction in and of itself, the undersigned finds a separate monetary sanction inappropriate and recommends against the Court issuing one.

## II.    Defendants' Motion to Dismiss

Defendants separately move to dismiss the Complaint on several other grounds, each of which have some degree of merit. (*See* Defendant's Motion to Dismiss, Dkt. No 38-33.) Given the recommendation to dismiss this matter as a sanction, the undersigned does not address each of these grounds. However, the undersigned notes that, even if the Court were to decide against dismissing the Complaint as a sanction, one of the grounds in Defendants' motion independently and plainly requires dismissal of Plaintiff's Complaint: that the claims are barred by a release Plaintiff signed as part of a prior settlement agreement. (*See id.* pp. 26–30.)

Plaintiff attaches the release at issue to the Complaint. (*See* Compl., Ex. 26 p. 3.) It is thus incorporated by reference and may be considered at the motion to dismiss stage. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). The Court may also take judicial notice of the Release. *See, e.g.*, *In re Nine W. LBO Sec. Litig.*, 505 F. Supp. 3d 292, 302 n.3 (S.D.N.Y. 2020) ("Settlement agreements are documents of which a court may take judicial

23

notice in order to determine whether future claims are barred by a previous settlement.") (quoting *Deylii v. Novartis Pharms. Corp.*, 13-CV-6699, 2014 WL 2757470, at *4 (S.D.N.Y. June 16, 2014)).

The undersigned finds that the language of the Release unambiguously releases all past and future claims against Defendants. *See supra* p. 3. Its terms also appear to encompass all predicate acts in Plaintiff's alleged RICO scheme and, thus, would require dismissal of the complaint. *See id; see also, e.g.*, *Johnson v. City of N.Y.*, 23-CV-3018, 2024 WL 3520445, at *5–6 (S.D.N.Y. July 23, 2024); (finding general release barred *pro se* plaintiff's civil rights claims that arose before execution of the release); *Gallo v. Inter-Con Sec. Sys. Inc.*, 20-CV-4879, 2021 WL 3913539, at *5–8 (S.D.N.Y. Sept. 1, 2021) (dismissing *pro se* plaintiff's discrimination claims against former employer when plaintiff had previously entered into settlement agreement releasing those claims); *Dechberry v. N.Y. City Fire Dep't*, 124 F. Supp. 3d 131, 141–43 (E.D.N.Y. 2015) (broad terms of general release warranted dismissal of *pro se* plaintiff's employment discrimination claims); *Interpharm v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 142 (2d Cir. 2011); ("Under New York law . . . a valid release constitutes a complete bar to an action on a claim which is the subject of the release.") (internal citation & quotation omitted).

In his opposition to the motion to dismiss, Plaintiff initially argued that the Release is not so broad as to encompass his claims, and that it is undermined by fraud, coercion, lack of consideration, and material breach. (*See* Pl's. MTD Opp.; Pl's. Mot. to Amend.) However, during the January 7, 2026 conference, Plaintiff conceded that all his claims would be covered by the Release. (*See* Jan. 7 Tr. at 30:22–31:5.) Plaintiff instead argues that he is not bound by the Release because he was never paid the settlement amount required under the agreement. (*See* Pl's. Mot. to Amend pp. 2–3; Jan. 7 Tr. at 27:15–29:3.)

The undersigned finds Plaintiff's argument unavailing. Plaintiff cannot unilaterally declare the release void and bring a RICO claim in federal court. Under the parties' settlement agreement, the state court retains jurisdiction to enforce the specific terms of that agreement. *See supra* p. 3. If, as Plaintiff alleges, Defendants breached the terms of the parties' agreement, Plaintiff's remedy is to seek enforcement in the state court with jurisdiction over the agreement. *See, e.g.*, *Town of Huntington v. Am. Mfrs. Mut. Ins. Co.*, 267 F.R.D. 449, 453 (E.D.N.Y. 2010) (granting motion to dismiss claims alleging breach of agreement to settle state court construction litigation because, *inter alia*, state court retained jurisdiction over agreement and it was an accessible forum to continue dispute); *Thanning v. Nassau Cnty. Med. Examiners Off.*, 187 F.R.D. 69, 71 (E.D.N.Y. 1999) ("[D]isputes arising out of the alleged breach of the settlement agreement amount to breach of contract claims that are properly decided in a state forum."); *Scelsa v. City Univ. of N.Y.*, 76 F.3d 37, 40–41 (2d Cir. 1996) ("[E]nforcement of a settlement agreement is for the state courts."). Therefore, Plaintiff's claims are barred by the release from the prior settlement agreement, and the undersigned recommends they be dismissed with prejudice on that basis.

## CONCLUSION

For the reasons set forth above, the undersigned recommends that the Court grant Defendants' motion for sanctions, including dismissing Plaintiff's Complaint with prejudice, or, alternatively, granting Defendants' motion to dismiss and dismissing Plaintiff's Complaint with prejudice. The undersigned also recommends that, should it grant the motion for sanctions, the Court also grant Defendants leave to file a formal application to recover fees related to that motion, which Plaintiff may oppose under the terms described herein.

## OBJECTIONS

Any objections to this Report and Recommendation must be filed within 14 days after

service of this Report and Recommendation.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Gujarati.  Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order.  28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010) ("[A] party [forfeits] appellate review of a decision in a magistrate judge's Report and Recommendation if the party fails to file timely objections designating the particular issue."); *Thomas v. Arn*, 474 U.S. 140 (1985) (finding Federal Magistrates Act does not forbid court of appeals from adopting rule conditioning appeal from district court's judgment that adopts magistrate judge's recommendation upon filing of objections to magistrate judge's report identifying those issues on which further review is desired).


**SO ORDERED.**

Dated: Brooklyn, New York
      February 23, 2026

              /S/  *SETH D. EICHENHOLTZ*
              SETH D. EICHENHOLTZ
              United States Magistrate Judge
              Eastern District of New York